FRANK M. HILL MACHINE COMPANY, PETITIONER, *v.* HENRY L. STIMSON, SECRETARY OF WAR, RESPONDENT.

Docket No. 82 R.   Promulgated March 2, 1945.

*Irwin Geiger, Esq.*, for the petitioner.
*J. R. Wilheim, Esq.*, for the respondent.

#### OPINION.

MURDOCK, *Judge*: The respondent has moved to dismiss this proceeding for lack of jurisdiction because it was not initiated by the filing of a petition until 92 days after the date of the determination of excessive profits.

Jurisdiction to determine the amount of excessive profits realized under contracts subject to renegotiation was conferred upon this Court by subsection (e) of the Renegotiation Act, section 403 of the Sixth Supplemental National Defense Appropriation Act, 1942, as amended by section 701 of the Revenue Act of 1943. Paragraph (1) thereof relates to proceedings based upon orders of the War Contracts Price

Adjustment Board, a new integrated renegotiating authority, created under the amendment contained in section 701. It has exclusive renegotiating jurisdiction with respect to all fiscal years ending after June 30, 1943. Subsec. (c) (6). It is required, in making a determination of excessive profits, to "issue and enter an order determining the amount" thereof and "forthwith give notice thereof by registered mail to the contractor or subcontractor." Subsec. (c) (1). If the latter is aggrieved by the order, he may, within 90 days after the mailing of the notice, file a petition with the Tax Court, and thereupon the Court shall have exclusive jurisdiction to determine the amount of excessive profits. Subsec. (e) (1).

Prior to the creation of this new Board, the authority to renegotiate contracts had been placed in the heads of various departments and agencies of the Government, including the Secretary of War. Their authority to renegotiate contracts terminated with fiscal years ending before July 1, 1943. The jurisdiction of this Court in such cases depends upon subsection (e) (2), which provides in part that a contractor aggrieved by a determination of the Secretary made on or after the date of enactment of the Revenue Act of 1943, with respect to a fiscal year ending before July 1, 1943, as to the existence of excessive profits, may within 90 days (not counting Sunday or a legal holiday in the District of Columbia as the last day) after the date of such determination, file a petition with the Tax Court of the United States for a redetermination thereof, and upon such filing the Court shall have exclusive jurisdiction to determine the amount of excessive profits. The date of the enactment of the Revenue Act of 1943 was February 25, 1944.

Thus, the provisions under which the jurisdiction of this Court can be invoked are different in a proceeding based upon a determination made by the War Contracts Price Adjustment Board from those governing a proceeding based upon a determination of a Secretary. There is a requirement that a notice of determination by the Board be mailed and the time within which a petition may be filed runs from the date of that mailing, but in the case of a determination made by a Secretary, the time runs from the date of the determination, regardless of mailing. This difference is too clearly expressed in the act to be ignored by this Court.

Not only is this difference too clearly expressed to be ignored, but also some reason for the difference is apparent. Where it is known in advance that mailing is to be determinative, steps can be taken to record properly the date of mailing. It may also be conceded that the mailing date may have some advantages over the date of determination for starting the 90-day period. It relieves the contractor of the risk of delay between the date of determination and the date on which he learns of the determination. The Board was not in exist-

ence prior to the 1943 amendment to the Renegotiation Act, but was created by that amendment. It could easily establish a practice under which the date of mailing could be used to start the 90-day period. But the Secretaries had been operating under the Renegotiation Act and had been making determinations of excessive profits prior to the date of the enactment which gave the Tax Court jurisdiction. Congress may have realized that the system under which these determinations were being made did not lend itself easily to the use of a mailing date to start the new 90-day period. Congress must have felt that the 90-day period would be ample in a case like this and would allow for whatever delay in notification might occur either in the War Department or in the Post Office Department. This subject has a long history in tax cases. Originally, petitions had to be filed with the Board of Tax Appeals within 60 days after the mailing of a notice of deficiency by registered mail by the Commissioner of Internal Revenue. Many petitions came in just a little late. All kinds of excuses for and explanations of the delay were presented, but the Board of Tax Appeals consistently held that it had no jurisdiction whatsoever unless the petition had been filed within the time prescribed by Congress. This action was sustained upon appeal to the appellate court. Later, Congress extended the period from 60 to 90 days so as to allow ample time in all cases. It does not appear that Congress was acting thoughtlessly when it fixed the date of determination to initiate the 90-day period in cases where the determination had been made by a Secretary.

The present proceeding is based upon a determination made by the Secretary of War for a fiscal year ended December 31, 1942. The date of the determination was July 11, 1944, which was after the date of enactment of the Revenue Act of 1943. The petition was filed on October 11, 1944, the 92d day after the date of the determination. The 90th day after the determination fell on a Monday which was not a legal holiday in the District of Columbia. Thus, the petition was not filed within the time specified in subsection (e) (2) and it came too late to give this Court jurisdiction.

The petitioner contends that the notice in this case was not mailed until July 13, 1944, and the petition was filed on the 90th day after that date. It is clear, however, that July 11 and not July 13 was the date of determination. It is likewise clear that the date of mailing is not controlling. The facts in the present case show how difficult and how unwise it would be to deviate from the clear statutory provisions. The date of determination is stamped plainly on the determination, but the date of mailing is not at all clear. The parties have filed affidavits showing in some detail how the determination was made and mailed. A proposed determination and a letter of transmittal were prepared in the Determination Section, War De-

partment Price Adjustment Board, and sent undated to the office of the Under Secretary of War on July 10 for his signature. They were signed and then returned on July 11 to the Determination Section, where, on that same day, the chief of section stamped on the date of July 11, 1944. They were next sent to the Mail and Records Section, where on July 12 they were processed for delivery by registered mail, placed in an envelope addressed to the petitioner, and delivered to a message center dispatch desk in the Adjutant General's office, at which point the registry number was endorsed on the envelope. The envelope was then sent on that same day to the War Department post office. It arrived there in the evening and at 10:36 p. m. was locked in a mail pouch. A representative of the Post Office Department usually collects mail pouches at the War Department post office a few minutes after they are locked. The records of the Registry Section, United States Post Office, Washington, D. C., indicate that this envelope was postmarked shortly after midnight and was placed aboard a train scheduled to depart from Washington at 1:30 a. m. on July 13, 1944.

Since the petition in this case was not filed within the time prescribed by Congress, it must be dismissed for lack of jurisdiction.