IVERSON & LAUX, INC., AN ILLINOIS CORPORATION, PETITIONER, *v.* JAMES FORRESTAL, SECRETARY OF THE NAVY OF THE UNITED STATES, RESPONDENT.

Docket No. 300–R.   Promulgated February 25, 1946.

*Edward J. Metzdorf, Esq.,* and *Marshall S. Howard, Esq.,* for the petitioner.

*S. R. Gamer, Esq.,* for the respondent.

### OPINION.

TURNER, *Judge:* The respondent has moved to dismiss this pro-ceeding for lack of jurisdiction on the ground that petitioner is a sub-contractor described in section 403 (a) (5) (B) of the Renegotiation Act and, as such, is excluded by the provisions of section 403 (e) (2) of that act from filing a petition with this Court for a redetermina-tion of the amount of profits for its fiscal year ended December 31, 1942, determined by the respondent to be excessive.

Under date of June 28, 1945, the respondent, pursuant to renegotia-tion under the Renegotiation Act, determined that $15,000 represented the portion of the petitioner's profits for its fiscal year ended December 31, 1942, realized under contracts with the Departments and subcon-tracts, as defined in that act, which were excessive. A notice of this determination was sent to the petitioner on that date, and on Septem-ber 25, 1945, it filed with this Court a petition for redetermination.

The petition states, *inter alia,* that the petitioner is an Illinois cor-poration; that it maintains its principal office and place of business in the city of Chicago; that it acted as sales representative of Hardinge Brothers, Inc., precision machine tool manufacturers, and was the exclusive sales and service representative of that corporation in the States of Illinois and Wisconsin and in the northern part of Indiana; that it sold and serviced precision machine tools manufactured by Hardinge Brothers; that substantially all such machine tools sold were shipped out of the Hardinge factory in Elmira, New York, and were billed by and paid for directly to Hardinge Brothers in Elmira; that, in the course of its business as exclusive sales and service repre-sentative, petitioner's engineers consulted with various war plants and manufacturers in the planning of the most efficient and economical type of machine tools which would accomplish the work required by the manufacturer, planning the location of the tools when delivered,

and instructing employees of the manufacturer in the use of the tools with the view of increasing efficiency of operation; that substantially all of these services were included as a part of the sales price of the machine and were rendered for the commissions earned on the sale of each machine; that no charge was ever made for such services; that during the period from April 28, 1942, to December 31, 1942, its commissions earned on all sales amounted to $73,428; and that only $26,145 of these commissions were based on machine tools sold directly for Defense Plant Corporation, Army or Navy use.

The pertinent provisions of the Renegotiation Act are set forth in the margin.[1]

---

[1] SEC 701. RENEGOTIATION OF WAR CONTRACTS.

\* \* \* \* \* \* \*

(b) RENEGOTIATION OF WAR CONTRACTS.—Section 403, as amended, of the Sixth Supplemental National Defense Appropriation Act, 1942, is amended to read as follows:

"SEC. 403. (a) For the purposes of this section—

\* \* \* \* \* \* \*

"(5) The term 'subcontract' means—

"(A) Any purchase order or agreement to perform all or any part of the work, or to make or furnish any article, required for the performance of any other contract or subcontract, but such term does not include any purchase order or agreement to furnish office supplies; or

"(B) Any contract or arrangement other than a contract or arrangement between two contracting parties, one of which parties is found by the Board to be a bona fide executive officer, partner, or full-time employee of the other contracting party, (i) any amount payable under which is contingent upon the procurement of a contract or contracts with a Department or of a subcontract or subcontracts, or determined with reference to the amount of such a contract or subcontract or such contracts or subcontracts, or (ii) under which any part of the services performed or to be performed consists of the soliciting, attempting to procure, or procuring a contract or contracts with a Department or a subcontract or subcontracts: *Provided,* That nothing in this sentence shall be construed (1) to affect in any way the validity or construction or provisions in any contract with a Department or any subcontract, heretofore at any time or hereafter made, prohibiting the payment of contingent fees or commissions; or (2) to restrict in any way the authority of the Secretary or the Board to determine the nature or amount of selling expenses under subcontracts as defined in this subparagraph, as a proper element of the contract price or as a reimbursable item of cost, under a contract with a Department or a subcontract.

\* \* \* \* \* \* \*

"(e) (1) Any contractor or subcontractor aggrieved by an order of the Board determining the amount of excessive profits received or accrued by such contractor or subcontractor may, within ninety days (not counting Sunday or a legal holiday in the District of Columbia as the last day) after the mailing of the notice of such order under subsection (c) (1), file a petition with The Tax Court of the United States for a redetermination thereof. \* \* \*

"(2) *Any contractor or subcontractor (excluding a subcontractor described in subsection (a) (5) (B))* aggrieved by a determination of the Secretary made prior to the date of the enactment of the Revenue Act of 1943, with respect to a fiscal year ending before July 1, 1943, as to the existence of excessive profits, which is not embodied in an agreement with the contractor or subcontractor, may, within ninety days (not counting Sunday or a legal holiday in the District of Columbia as the last day) after the date of the enactment of the Revenue Act of 1943, file a petition with The Tax Court of the United States for a redetermination thereof, and *any such contractor or subcontractor aggrieved by a determination of the Secretary made on or after the date of the enactment of the Revenue Act of 1943, with respect to any such fiscal year, as to the existence of excessive profits, which is not embodied in an agreement with the contractor or subcontractor, may, within ninety days (not counting Sunday or a legal holiday in the District of Columbia as the last day) after the date of such determination, file a petition with The Tax Court of the United States for a redetermination thereof.* \* \* \*" [Italics supplied.]

In a memorandum filed in opposition to respondent's motion to dismiss, the petitioner contends that it was the intention of Congress in enacting the Renegotiation Act to grant judicial review by the courts to contractors and subcontractors in respect of determinations under the renegotiation statute; that the services rendered by it in connection with its sale of machine tools are sufficient to make it a subcontractor within the meaning of subsection (a) (5) (A) of section 403 and, as such, entitled to file a petition for redetermination with this Court; and that, even if it could be granted that it is a subcontractor only within the meaning of subsection (a) (5) (B), it would nevertheless be entitled to maintain an appeal to this Court because the exclusion clause in subsection (e) (2) does not apply where, as here, the determination of excessive profits was made after the date of the enactment of the Revenue Act of 1943.

The jurisdiction of this Court in cases involving appeals by contractors and subcontractors from determinations of excessive profits made pursuant to the provisions of the Renegotiation Act is prescribed in subsections (e) (1) and (e) (2) of section 403, *supra.* The petition in this proceeding was filed pursuant to the provisions of subsection (e) (2), which provides that "any contractor or subcontractor (*excluding a subcontractor described in subsection* (*a*) (*5*) (*B*))" aggrieved by a determination of excessive profits, may file a petition with this Court. The obvious intention of Congress in inserting the quoted parenthetical clause in subsection (e) (2) was to deny the right to file a petition with this Court to any subcontractor described in subsection (a) (5) (B). The latter defines "subcontract" to mean "Any contract or arrangement * * * (i) any amount payable under which is contingent upon the procurement of a contract or subcontract or such contracts or subcontracts, or (ii) under which any part of the services performed or to be performed consists of the soliciting, attempting to procure, or procuring a contract or contracts with a Department or a subcontract or subcontracts * * *." The facts recited in the petition, hereinbefore set forth, disclose that petitioner had a contract or arrangement with Hardinge Brothers, Inc., under which the amount of the commissions it was to receive was contingent upon the procurement of contracts for machine tools, and under which a part of the services performed consisted of procuring a contract or contracts with a Department.[2] The fact that petitioner did render some engineering services in connection with its sales, which would appear to bring it within subsection (a) (5) (A), is not, as petitioner seems to think, sufficient to give this Court jurisdiction over the proceeding here. A substantial

---

[2] Sec. 403. (a) For the purposes of this section—

(1) The term "Department" means the War Department, the Navy Department, the Treasury Department, the Maritime Commission, the War Shipping Administration, Defense Plant Corporation, Metals Reserve Company, Defense Supplies Corporation, and Rubber Reserve Company, respectively.

* * * * * * *

250

part, if not the principal part, of the services rendered by petitioner was the procuring of contracts for Hardinge Brothers for the sale of machine tools, and according to the statute a subcontractor is a subcontractor within the meaning of subsection (a) (5) (B) if "any part" of the services performed consists of procuring a contract or contracts with a department, and a department as defined by the statute means, among others, the War Department, the Navy Department, and the Defense Plant Corporation. The petition states that $26,145 of the total commissions received by petitioner during the year here in question were based on machine tools sold by it for Hardinge Brothers directly for Army, Navy, or Defense Plant Corporation use. It follows that petitioner is a subcontractor within the meaning of subsection (a) (5) (B), and is not therefore a contractor or subcontractor who, under the statute, may file a petition with this Court for the redetermination of excessive profits.

Petitioner's remaining contention, that the exclusion clause in subsection (e) (2) does not apply where, as here, the determination of excessive profits was made after the date of the enactment of the Revenue Act of 1943, is not sound. It is true that the parenthetical clause "(excluding a subcontractor described in subsection (a) (5) (B))" was not repeated in that part of the subsection relating to a determination made on or after the date of the enactment of the Revenue Act of 1943. Repetition was avoided and made unnecessary by the use of the words "any *such* contractor or subcontractor," which relate back to the words at the beginning of the subsection, "Any contractor or subcontractor (excluding a subcontractor described in subsection (a) (5) (B))." It was the clear intention of Congress in enacting subsection (e) (2) that the exclusion clause apply whether the determination was made prior to, or on, or after the date of the enactment of the Revenue Act of 1943.

The motion of respondent is granted and, accordingly, the proceeding must be dismissed.

Reviewed by the Court.

*An order of dismissal will be entered.*