LEON FINE, D/B/A LEON FINE & COMPANY, PETITIONER, *v.* WAR CONTRACTS PRICE ADJUSTMENT BOARD, RESPONDENT.

Docket No. 148–R.   Promulgated October 7, 1947.

*G. L. Weisbard, Esq.,* and *Joseph Kamfner, Esq.,* for the petitioner. *Robert H. Winn, Esq.,* for the respondent.

OPINION.

VAN FOSSAN, *Judge*: As a result of renegotiation proceedings initiated by the Services and Sales Renegotiation Section of the Office of the Under Secretary of the Navy, acting on behalf of the War Contracts Price Adjustment Board, it was determined by such section that petitioner's profits for the year 1943 were excessive in the amount of $11,683.08, which, after adjustment for a tax credit of $7,055.40, required a refund to the United States of $4,627.68. The War Contracts Price Adjustment Board adopted the determination as its determination. In its answer to the amended petition, the respondent asks that we determine petitioner's excessive profits in the calendar year 1943 to be $11,598.51, or the difference between the statutory floor of $25,000 and petitioner's gross receipts of $36,598.51 in connection with contracts for products having a war-end use.

The petitioner, in 1943, received compensation in the total gross amount of $36,598.51, of which amount $19,131.44 represented commissions on the amount of contracts or subcontracts procured by him for his principals and $17,467.07 represented commission at 4½ per

cent upon the amount of certain contracts or subcontracts of Raymond De-Icer Co. of California. The payment of no part of this latter amount was contingent upon the procurement by petitioner of any such contracts or subcontracts: There is no dispute about these facts. They were conceded by respondent.

It is contended by petitioner that his compensation to the extent of $17,467.07, the amount received from Raymond De-Icer Co. of California, is free of renegotiation since it was not derived pursuant to a contract or arrangement as defined in section 403 (a) (5) (B) of the Sixth Supplemental National Defense Appropriation Act, as amended,[1] and that, therefore, the balance of his compensation, $19,131.44, the amount received under contracts within the meaning of section 403 (a) (5) (B), is less than the minimum of $25,000 exempt from renegotiation under section 403 (c) (6).[2]

The petitioner and respondent agree that the phrase in section 403 (a) (5) (B), "determined with reference to the amount of such a contract or subcontract or such contracts or subcontracts," must be construed in connection with the statutory language quoted in the footnote. The respondent, however, seeks to limit the reference for purposes of construction to the words "contract or contracts with a De-

---

[1] SEC. 403. (a) For the purposes of this section—

\*        \*        \*        \*        \*        \*        \*

(5) The term "subcontract" means—

(A) Any purchase order or agreement to perform all or any part of the work, or to make or furnish any article, required for the performance of any other contract or subcontract, but such term does not include any purchase order or agreement to furnish office supplies; or

(B) Any contract or arrangement other than a contract or arrangement between two contracting parties, one of which parties is found by the Board to be a bona fide executive officer, partner, or full-time employee of the other contracting party, (i) any amount payable under which is contingent upon the procurement of a contract or contracts with a Department or of a subcontract or subcontracts, or determined with reference to the amount of such a contract or subcontract or such contracts or subcontracts, or (ii) under which any part of the services performed or to be performed consists of the soliciting, attempting to procure, or procuring a contract or contracts with a Department or a subcontract or subcontracts; *Provided,* That nothing in this sentence shall be construed (1) to affect in any way the validity or construction of provisions in any contract with a Department or any subcontract, heretofore at any time or hereafter made, prohibiting the payment of contingent fees or commissions; or (2) to restrict in any way the authority of the Secretary or the Board to determine the nature or amount of selling expenses under subcontracts as defined in this subparagraph, as a proper element of the contract price or as a reimbursable item of cost, under a contract with a Department or a subcontract.

[2] (6) This subsection shall be applicable to all contracts and subcontracts, to the extent of amounts received or accrued thereunder in any fiscal year ending after June 30, 1943, whether such contracts or subcontracts were made on, prior to, or after the date of the enactment of the Revenue Act of 1943, and whether or not such contracts or subcontracts contain the provisions required under subsection (b), unless (A) the contract or subcontract provides otherwise pursuant to subsection (i), or is exempted under subsection (i), or (B) the aggregate of the amounts received or accrued in such fiscal year by the contractor or subcontractor and all persons under the control of or controlling or under common control with the contractor or subcontractor, under contracts with the Departments and subcontracts (including those described in clause (A), but excluding subcontracts described in subsection (a) (5) (B)) do not exceed $500,000 and under subcontracts described in subsection (a) (5) (B) do not exceed $25,000 for such fiscal year. If such fiscal year is a fractional part of twelve months, the $500,000 amount and the $25,000 amount shall be reduced to the same fractional part thereof for the purposes of this paragraph.

partment or of a subcontract or subcontracts" so that the whole clause would read: "determined with reference to the amount of a contract with a Department or subcontract or contracts with a Department or subcontracts." Petitioner argues that reference to the preceding language may not be so limited and that "such" contract or contracts or "such" subcontract or subcontracts relate back to the phrase "the procurement of" a contract or contracts with a Department.

Although the question at issue was that of jurisdiction, the construction of the above statutory language was considered and discussed in *George M. Wolff* v. *Edward Macauley, Acting Chairman, United States Maritime Commission*, 8 T. C. 146. In that case the respondent took the position that the petitioners were subcontractors as described in section 403 (a) (5) (B) and that by reason thereof they were excluded under section 403 (e) (2) from filing a petition with this Court for redetermination. After reviewing the legislative history of the section, this Court stated:

With this legislative history in mind, we must determine whether the petitioners, on the basis of the four subcontracts in question, are subcontractors described in section 403 (a) (5) (B). We do not think they are as to subcontract 16 and purchase order No. 71742 merely because in the former case their fee was to be computed on the total amount of contracts approved for the construction of buildings and in the latter was based on 5 per cent of estimated costs. Certainly their fee was not "contingent upon the procurement of a contract * * * with a Department or of a subcontract," nor do we think it may be said that it was "determined with reference to the amount of *such* a contract or subcontract" [italics added] that is, a contract or subcontract procured by petitioners. In other words, the phrase "determined with reference to the amount of such a contract," etc., may not be isolated, as the respondent would have it, but must be construed in connection with the preceding language and in the light of the purpose sought to be accomplished by Congress. So construed, the language of the statute aptly applies to manufacturers' agents and sales engineers who procure Government contracts for their principals and whose compensation is contingent upon the business they are able to obtain for the principals or fixed by the amount of such business.

See also *Iverson & Laux, Inc.* v. *James Forrestal, Secretary of the Navy*, 6 T. C. 247.

Herein, as in the *Wolff* case, the petitioner was not a subcontractor within the meaning of section 403 (a) (5) (B) merely because his compensation was based or computed upon the amount of the contracts or subcontracts procured by his principal. Since petitioner's compensation of $17,467.07 received from Raymond De-Icer Co. was not based or contingent upon the amount of contracts procured by him for his principal, it was not derived pursuant to subcontracts as defined in section 403 (a) (5) (B), as construed in the *Wolff* case.

We conclude, therefore, that petitioner's 1943 compensation of $36,598.51 was free of renegotiation to the extent of $17,467.07. Subtracted from the total, this leaves but $19,131.44 of his compensation

about which there is no dispute. However, since this amount, admittedly received on subcontracts within section 403 (a) (5) (B), is less than ̀$25,000, it is exempt from renegotiation under section 403 (c) (6).

While no contention has been made that petitioner's contracts fall within the definition of section 403 (a) (5)· (A), we may say in passing that petitioner's entire compensation obviously is less than the $500,000 minimum limit applicable to section 403 (a) (5) (A) contracts by virtue of section 403 (c) (6). The result, therefore, would be the same in either case.

Reviewed by the Court.

*An order will issue in accordance herewith.*

---

HARRON, *J.*, dissenting: It is my understanding that this case is of importance as a test case, to test the meaning of the words used in (i) of section 403 (a) (5) (B), with respect to the fees paid to petitioner under his contract with Raymond De-Icer Co. The question is whether petitioner's contract of May 15, 1943, with Raymond De-Icer Co. was a "subcontract" within the meaning of (i) of section 403 (a) (5) (B).

If petitioner had agreed in the Raymond contract to solicit or attempt to procure a contract with a Department, or subcontracts, it would be a subcontract under (ii) of section 403 (a) (5) (B) ; or if any amount payable to petitioner under the Raymond contract had been contingent upon the procurement of a contract with a Department, or subcontract, the Raymond contract would be a subcontract under (i) of section 403 (a) (5) (B). The terms of the Raymond contract did not embrace either of the above factors. However, Raymond had certain contracts or subcontracts with a Department or Departments, and the agreement with petitioner provided that his fees would be determined with reference to such Department contracts. That is the purport of the provision in the second paragraph of the agreement, and it is found as a fact that $17,467.07, represented 4½ per cent on the sales price received by Raymond on certain of its contracts (meaning contracts with Departments).

It is the view of the majority that (i) in section 403 (a) (5) (B) is limited to an arrangement under which one party is to receive as compensation for his services, an amount determined with reference to the amount of a contract with a Department *which he procures*. That construction of the pertinent part of section 403 (a) (5) (B) was made first in *Wolff* v. *Macauley*, 8 T. C. 146, which was not reviewed by the Court.

If the Congress intended that (i) should be limited to arrangements with agents where the agent procured a contract with a Depart-

ment for his principal, there would seem to have been little reason for (ii) in section 403 (a) (5) (B). That clause becomes a tautological clause, unnecessarily repeating part of what would be covered by (i), if the view of the majority is correct.

Searching the record to learn the intent of the legislators, I find significant statements of Mr. Vinson of Georgia in the Congressional Record for April 20, 1943, at page 3687 (edition of the daily printing of the Record), where he speaks, not of the services of agents in procuring a contract, but of the payments to such agents, afterward, in servicing a contract with a Department. Part of his statement is set forth in the margin.[1]

In the record of the hearings before the Committee on Naval Affairs (Senate), 78th Cong., 1st sess., on H. R. 1900, May 12, 1943, Jacob E. Davis, Special Assistant to the Under Secretary of the Navy, stated at page 17, as one of the objectives in dealing with the problem of fees of brokers and agents, as follows:

* * * First, to prevent the unwarranted expense to the Navy caused by the inclusion of these exorbitant fees in the selling price of the contracts *to which they were referable;* * * * [Italics supplied.]

I am of the opinion that (i) in (B) of section 403 (a) (5) is clear in its wording, although awkward, and that it provides that the term "subcontract" shall include an arrangement whereunder the compensation payable is determined with reference to the amount of a contract with a Department, or of a subcontract, regardless of whether the payee, a representative of the principal, did or did not *procure* the contract with the Department to which the fee is referable. This construction of (i) finds support, in my opinion, in the explanation given in Report 353 of the Committee on Naval Affairs of the House, 78th Cong., 1st sess., at page 6, which is quoted in the *Wolff* case, *supra,* notwithstanding the opposite view thereof which was taken

---

[1] Mr. Vinson of Georgia. * * * What selling is necessary in such a situation as this? Agent after agent who appeared before the committee admitted that little, if any, selling is required in these days. This is particularly true on repeat orders. Once a company has demonstrated its ability to produce, order after order keeps coming in, until even its expanded capacity is taxed, and there is a huge backlog which it will take months and even years to complete. And it must be remembered that appended to all this are contingent fees, mounting, ever mounting, as the war program expands.

I am not prepared to say that in peacetime, and even at the beginning of the emergency, some of these representatives may not have served a useful function. They may have helped bring together Government and business, by persuading manufacturers that they could make something needed in the war program, and convincing Government officials to give them an opportunity to show what they could do. They may have made some suggestions for the adaptation of peacetime production to war requirements. Now that the war program has gotten under way, however, there is little left for them to do. They may help with priorities, they may expedite payments, they may generally service the contracts, but all this is certainly not worth anything like the huge sums they are receiving. Scarcely ever do they have a technical engineering background or experience. Hence they cannot perform engineering services. That is done by the engineers and designers in the services, and the engineering departments of the contractors. In short, they act as nothing more than intelligent conveyors of information between their principals and the Government departments.

in the *Wolff* case. I believe (i) is broad in its terms, and that the Congress was attempting to reach, for renegotiation, *all* fees paid to agents of principals *which would enter into the costs to be paid by the Government* under contracts with principals who paid fees to agents; and that, in order to reach all fees of agents which, in the last analysis, the Government would be paying as part of the cost of a war contract, the legislators worded (i) to include fees which would be referable to a war contract whether or not the agent *procured* the contract to which the fee is referred. The record of the legislators' considerations shows that they were concerned about fees for "servicing" contracts which the agent did not procure. Since the view adopted by the majority serves to narrow the scope of (i) in a way which I believe was not intended, I respectfully dissent.

TURNER and OPPER, *JJ.*, agree with this dissent.