C. H. TRACE, PETITIONER, *v.* WAR CONTRACTS PRICE ADJUSTMENT BOARD, RESPONDENT.

Docket Nos. 406–R, 547–R, 748–R.    Promulgated November 27, 1953.

*C. H. Trace, pro se.*
*Harland F. Leathers, Esq.,* for the respondent.

OPINION.

HILL, *Judge:* In Docket Nos. 406-R, 547-R, and 748-R ,the War Contracts Price Adjustment Board issued a unilateral order determining that the petitioner for his fiscal years ended December 31, 1943, December 31, 1944, and December 31, 1945, respectively, had realized excessive profits. The petitioner filed petitions with this Court for a redetermination of the issue. The authority under which the petitioner filed his petitions and by which this Court had jurisdiction thereof is section 403 (e) (1) of the Renegotiation Act of 1943, which provides in pertinent part as follows:

Any contractor or subcontractor aggrieved by an order of the Board determining the amount of excessive profits received or accrued by such contractor or subcontractor may, within ninety days (not counting Sunday or a legal holiday in the District of Columbia as the last day) after the mailing of the notice of such order under subsection (c) (1), file a petition with The Tax Court of the United States for a redetermination thereof. Upon such filing such court shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits received or accrued by the contractor or subcontractor, and such determination shall not be reviewed or redetermined by any court or agency. The court may determine as the amount of excessive profits an amount either less than, equal to, or greater than that determined by the Board. A proceeding before the Tax Court to finally determine the amount, if any, of excessive profits shall not be treated as a proceeding to review the determination of the Board, but shall be treated as a proceeding de novo. * * *

In accordance with the then effective rules of this Court, the War Contracts Price Adjustment Board was named as the respondent. After the filing of the petitions mentioned above and while these actions were still pending in this Court, Congress enacted the Renegotiation Act of 1951, which pursuant to section 201 (k) was effec-

tive 60 days after the Act's approval, or on May 22, 1951. Section 201 (a) of that Act abolished the War Contracts Price Adjustment Board, and section 201 (h) contained a savings clause which provides in pertinent part as follows:

(h) SAVINGS PROVISION.—This section shall not be construed * * * to prejudice or to abate any action taken or any right accruing or accrued, or any suit or proceeding had or commenced in any civil cause; but any court having on its docket a case to which the War Contracts Price Adjustment Board is a party, on motion or supplemental petition filed at any time within twelve months after the effective date of this section, showing a necessity for the survival of such suit, action, or other proceeding to obtain a determination of the questions involved, may allow the same to be maintained by or against the United States.

By supplemental statute (66 Stat. 752), Congress extended the time for filing a supplemental petition or motion for an additional 12 months, or to May 22, 1953. On November 15, 1952, the Rules of Practice of this Court were amended to conform to the provisions of section 201 (h). Rule 64, Rules of Practice Before The Tax Court of the United States.

No motion or supplemental petition seeking to substitute the United States as defendant in the causes involved herein was filed with this Court during the statutory period as set forth above. It was not until September 21, 1953, that the petitioner's motion herein was filed with this Court. On August 13, 1953, the respondent by motion moved this Court to dismiss the proceedings involved herein for lack of jurisdiction because the provisions of section 201 (h) of the Renegotiation Act of 1951 had not been complied with by the petitioner.

We must grant the respondent's motion to dismiss and deny the petitioner's motion to substitute the United States as respondent. Our reason for doing so is that the petitioner's failure to comply with the provisions of section 201 (h) has effected an abatement of the proceedings and deprives us of jurisdiction in the matters involved.

This Court is, of course, a court of limited jurisdiction, exercising only those powers granted to it by statute. If the statutes upon which our jurisdiction rests are not complied with, we lose jurisdiction, e. g., *Hill Machine Co.* v. *Secretary of War*, 4 T. C. 922; *Iverson & Laux, Inc.* v. *Secretary of Navy*, 6 T. C. 247.

In reaching our conclusion we are not unmindful of the recent decision of the Court of Appeals for the District of Columbia Circuit in *Chairman of United States Maritime Commission* v. *California Eastern Line, Inc.*, 204 F. 2d 398. That case involved section 9 of the Reorganization Act of 1949, which provided:

No suit, action, or other proceeding lawfully commenced by or against the head of any agency or other officer of the United States, in his official capacity or in relation to the discharge of his official duties, shall abate by reason of the taking effect of any reorganization plan under the provisions of sections 133z to

133z-15 of this title, but the court may, on motion or supplemental petition filed at any time within twelve months after such reorganization plan takes effect, showing a necessity for a survival of such suit, action, or other proceeding to obtain a settlement of the questions involved, allow the same to be maintained by or against the successor of such head or officer under the reorganization effected by such plan or, if there be no such successor, against such agency or officer as the President shall designate.

Counsel for the respondent argued that since the petitioner in that case did not file a motion or supplemental petition with this Court within the 12-month period following May 24, 1950, requesting that the action survive against the Secretary of Commerce, who was the successor to such Board, that the action abated and that this Court was without jurisdiction to render its decision. In denying the respondent's motion the Court of Appeals decided that the term "court" as used in section 9 of the Reorganization Act of 1949 was not meant to include The Tax Court of the United States and, further, that the common law rules of abatement did not apply to this Court, saying in part as follows:

In renegotiation proceedings before the Tax Court, the doctrines of abatement and substitution applicable to judicial proceedings are not in our view required for the protection either of the citizen or of the Government. On the Government's side, it is the national treasury which, in any event, will ultimately gain or lose as against the citizen. And the hazard that the proper Government official may not be named as respondent under the rules of the Tax Court presents no serious difficulty. In the instant case, no affirmative relief was asked against the Chairman of the Maritime Commission in the Tax Court proceedings; the Tax Court was simply to review his order and redetermine the matters there involved. Abatement on the ground that the Chairman was no longer in office or his office no longer in existence would not bear any relation to the realities of the situation, and would defeat the ends of justice. We would not willingly reach that result unless required to do so by legislation or proper administrative rule. In the present case we find no such statutory or administrative requirement. Accordingly we deny the Government's motion to remand the cause to the Tax Court with directions to vacate its judgment.

Our inquiry must then be whether Congress when using the term "court" in section 201 (h) of the Renegotiation Act of 1951, as amended, intended The Tax Court of the United States. The legislative history of this section indicates that such was indeed the case. First, it must be realized that section 403 (c) (2) of the Renegotiation Act of 1943 provides that actions to collect renegotiation claims (the only de novo litigation relating to renegotiation conducted outside of this Court) shall be in the name of the United States. On the other hand section 403 (e) of the Renegotiation Act of 1943 specifically provided that actions to determine the amount of excessive profits received or accrued by a contractor or subcontractor should be heard in this Court against the War Contracts Price Adjustment Board or, pur-

suant to section 201 (h) of the Renegotiation Act of 1951, against the United States.

The legislative history of section 201 (h) indicates that the members of the Committee on Ways and Means specifically asked what litigation involving renegotiation was pending and were advised of no litigation other than that in this Court. Hearings before the Ways and Means Committee, H. R. 9246, 81st Cong., 2d Sess., Aug. 25, 1950. Congress therefore evidently intended the term "court" to mean The Tax Court of the United States. This is clearly demonstrated by the statement contained in S. Rept. No. 1837 accompanying H. R. 5734, which became effective as 66 Stat. 752, 753, to the effect:

Your committee's second amendment extends for an additional year the time during which a litigant may substitute a new defendant for the War Contracts Price Adjustment Board in suits with respect to renegotiated contracts. Section 201 (h) of the Renegotiation Act of 1951 permitted such a substitution within 12 months after its effective date. It is the undersanding of your committee that in a large number of suits pending in the Tax Court no motion for substitution was made within this 12-month period, and that these suits will be dismissed without consideration on their merits unless the time for filing motions for substitution is extended. [U. S. Cong. News, 1952, Vol. 2, pp. 2311, 2312.]

Again, on July 3, 1952, when the Renegotiation Act of 1951 was being discussed on the floor of the United States Senate, Senator George had this to say in explanation of section 201 (h) :

That section merely gives an additional period of 12 months for the substitution of the proper party in proceedings before the courts, including the Tax Court in connection with renegotiation proceedings under World War II Renegotiation law. It is necessary to substitute a new party because the old Renegotiation Board has been abolished. [98 Cong. Rec. 9078.]

Further, on July 29, 1953, when Congress was again considering extending the time in which the provisions of section 201 (h) could be complied with, the following was said by Senator Millikin in explanation of the purpose of the section under consideration:

The Bill in Section 6 extends for one additional year the time in which the United States can be substituted for the World War II War Contracts Price Adjustment Board in suits before the Tax Court. If this extension is not granted, a number of suits now pending in that Court will be subject to dismissal on a technicality rather than on the merits. Under the existing law, the substitution was required to be made within two years after March 23, 1951 [sic May 22, 1951], the effective date of the Renegotiation Act of 1951. [99 Cong. Rec. 10537.]

We, therefore, have no doubt that Congress intended the term "court" as used in section 201 (h) to mean The Tax Court of the United States and that for the purposes under consideration the rules of abatement should apply to this Court. As the result of these conclusions it follows that since the petitioner had not complied with the

308

provisions of section 201 (h) as amended, this Court is without jurisdiction to further consider the matters raised by the petitions in question.

Reviewed by the Court.

> *An order will be entered granting the respondent's motion to dismiss the proceedings involved herein for lack of jurisdiction and denying the petitioner's motion for substitution of the United States as respondent.*