**UNITED STATES of America,**
**Plaintiff,**

v.

**WHITEHOUSE & PINE, Inc.,**
**Defendant.**

United States District Court,
S. D. New York.

Dec. 31, 1954.

J. Edward Lumbard, U. S. Atty., Southern Dist. of N. Y., New York City, for plaintiff. Harold J. Raby, Asst. U. S. Atty., New York City, Harland F. Leathers, Dept. of Justice, Washington, D. C., of counsel.

Kaye, Scholer, Fierman & Hays, New York City, for defendant, Benjamin M. Kaye, Fred A. Freund, Sherwood Maggin, New York City, of counsel.

DIMOCK, District Judge.

This is a motion, under Rule 56, Fed. Rules Civ.Proc., 28 U.S.C., by the United States of America, plaintiff, for an order striking the answer of Whitehouse & Pine, Inc., defendant, granting summary judgment in favor of plaintiff against defendant and vacating defendant's notice of deposition served upon plaintiff and dated January 12, 1953.

Subsequent to the date of service of plaintiff's motion but prior to the agreed date for argument thereof defendant served plaintiff with a cross-motion for leave to amend the answer to the complaint. Upon the consent of the parties upon oral argument, I granted defendant's motion to amend and will consider plaintiff's motion as addressed, so far as pertinent, to the amended answer.

The action is brought pursuant to Title 28 U.S.C. section 1345 and section 403(c) of the Renegotiation Act as amended,[1] 50 U.S.C.App. § 1191. The Government seeks to recover the sum of $170,000 together with interest computed at the rate of six percent from September 14, 1946. The complaint alleges the commencement and completion of renegotiation proceedings under the Renegotiation Act culminating in a determination by the Navy Department that defendant realized $170,000 in excessive war profits during its fiscal year ended May 31, 1943.

Defendant admits the determination and receipt of notice thereof but answers that the sum determined is excessive.

In support of its motion the Government argues that the question which defendant seeks to raise is one which could have been raised only by an appeal to the Tax Court and that since defendant admits that it failed to take an appeal to the Tax Court there is no material fact in issue between the parties.

Defendant counters by saying that it is a "subcontractor" of the special type defined in § 403(a) (5) (B) of the Renegotiation Act, that "(a) (5) (B) subcontractors" have no right of appeal to the Tax Court and that, unless this court construes the Act as providing a hearing here on defendant's contention that the amount claimed as a result of renegotiation is excessive, the Act is unconstitutional as applied to defendant.

Defendant says that if this court should construe the Act as providing a hearing here there would still be a ma-

---

1. Act Apr. 28, 1942, C. 247, Title IV, § 403, 56 Stat. 245, as amended in full by section 701(b) of the Revenue Act of 1943, Act Feb. 25, 1944, C. 63, Title VII, § 701(b), 58 Stat. 78.

terial issue of fact with respect to the correctness of the determination of the amount of excessive profits so that, in that case, plaintiff's motion for summary judgment would have to be denied.

Defendant further says that, if this court does not construe the Act as providing a hearing here and it is consequently unconstitutional, not only would plaintiff's motion for summary judgment have to be denied but summary judgment would be granted defendant dismissing the case.

Section 403(e) (2) of the Act,[2] which provides for appeals to the Tax Court, reads in part:

"(2) Any contractor or subcontractor (excluding a subcontractor described in subsection (a) (5) (B)) * * * aggrieved by a determination of the Secretary made on or after the date of the enactment of the Revenue Act of 1943, with respect to any [fiscal year ending before July 1, 1943], as to the existence of excessive profits, which is not embodied in an agreement with the contractor or subcontractor, may, within ninety days (not counting Sunday or a legal holiday in the District of Columbia as the last day) after the date of such determination, file a petition with The Tax Court of the United States for redetermination thereof."

Section 403(a) (5) (B) of the Act,[3] which in effect describes these "(a) (5) (B) subcontractors", reads in part:

"(5) The term 'subcontract' means—* * *

"(B) Any contract or arrangement other than a contract or arrangement between two contracting parties, one of which parties is found by the Board to be a bona fide executive officer, partner, or full-time employee of the other contracting party, (i) any amount payable under which is contingent upon the procurement of a contract or contracts with a Department or of a subcontract or subcontracts, or determined with reference to the amount of such a contract or subcontract or such contracts or subcontracts, or (ii) under which any part of the services performed or to be performed consists of the soliciting, attempting to procure, or procuring a contract or contracts with a Department or a subcontract or subcontracts * * *."

Some language in the amended answer and the "Memorandum of Defendant In Opposition to Plaintiff's Motion for Summary Judgment" seems to indicate that defendant seeks to support its contention that the amount claimed as a result of renegotiation is excessive upon a theory that the amount claimed was based, to a large extent, upon commissions earned by defendant on contracts which it procured for its principal with British and Canadian nationals. This I shall call the "foreign contract theory".

Paragraph "Tenth" of the amended answer reads:

"That the said determination of the Secretary of the Navy was based entirely upon commissions received by the defendant from Buckeye and upon a settlement sum paid by Buckeye to this defendant in settlement of the defendant's claim against Buckeye for commissions; that this settlement sum was in fact based almost entirely on commissions due on British and Canadian contracts but that Buckeye incorrectly represented to said Services and Sales Renegotiation Section that a very large part of the settlement sum should be allocated to American contracts; that the defendant endeavored to procure from said Section a record of the renegotiation proceedings against Buckeye, but that all requests of the defendant for such information were denied."

In its memorandum opposing plaintiff's motion defendant says:

---

2. 58 Stat. 87, 50 U.S.C.App. § 1191(a) (2).

3. 58 Stat. 80, 50 U.S.C.App. § 1191(a) (5) (B).

"Defendant does not dispute the issuance of the said order nor that defendant was subject to renegotiation under the aforementioned Act.

"However, defendant contends that the Government has levied an unreasonably excessive assessment based upon misinformation received from parties other than defendant. In essence, the incorrect calculation arose in the following manner:

"(a) Defendant was a manufacturer's representative who had made sales of the products of the Buckeye Traction Ditcher Company (hereinafter referred to as 'Buckeye') to the British and Canadian Governments during the period prior to May 31, 1942, and who was entitled, under contract with Buckeye, to receive commissions on such sales.

"(b) After the entry of the United States into World War II, defendant agreed with Buckeye to procure contracts for Buckeye from the United States Government on a commission basis.

"(c) During the fiscal year ending May 31, 1943, to which the said renegotiation order pertains, defendant, after discontinuing its relations with Buckeye, reached a settlement with Buckeye of $495,000, netting only some $395,000 to defendant, for outstanding commissions owed on British and Canadian sales and, to a partial extent, on the procurement of contracts from the United States Government.

"(d) Subsequently, Buckeye's contracts with the Government were renegotiated. In connection therewith, Buckeye misrepresented that, of the settlement sum of $495,000, a much larger amount was attributable to commissions on the solicitation of contracts from the United States by defendant than was actually the case. Such a misrepresentation was to the great advantage of Buckeye inasmuch as it increased the expenses on Buckeye's United States contracts and thereby reduced the amount that the government might assess against Buckeye as excessive profits.

"(e) As a consequence of the foregoing, when the defendant, as a subcontractor on contracts, was renegotiated to reclaim for the Government allegedly excessive commissions, the Navy representative was operating under a misconception induced by the Buckeye misrepresentation. Thus, if the Navy representative assumed that the settlement sum in too large a part reflected commissions on United States contracts, rather than on sales to Britain and Canada, he would accordingly, assess against defendant a greater sum than would otherwise have been proper.

"(f) The United States had no right under the Renegotiation Act to reclaim commissions derived from sales to the British and Canadian Governments. Based upon the extent to which the said commission settlement from Buckeye properly reflected commissions on United States contracts alone, the assessment of $170,000 made on behalf of the Secretary of the Navy is grossly excessive and bears no true relation to the facts as they actually existed."

On the other hand, there is language in the amended answer and in defendant's "Supplemental Affidavit in Opposition to Motion for Summary Judgment", which seems to indicate that defendant seeks to support its contention that the amount claimed by the Government is excessive upon a theory that if the amount is based entirely upon commissions earned by defendant on American contracts which it procured for its principal with Departments, as the term is defined in § 403(a)(1)[4] of the Act, said amount is unreasonably high. This I shall call the "American contract theory".

Paragraph "Eleventh" of the amended answer reads:

---

**4.** 58 Stat. 78, 50 U.S.C.Appendix, § 1191(a) (1).

"That the defendant was a subcontractor on contracts, as defined in Section 403(a) (5) (b) of the Renegotiation Act of 1943, and that the renegotiation proceedings which are the subject matter of the within complaint involved only commissions received by the defendant as such subcontractor."

In the paragraph numbered "2" of defendant's supplemental affidavit opposing plaintiff's motion one of the attorneys for defendant says:

" * * * he [Mr. Melvin Pine, one of the two principals in defendant corporation] contends that, based upon the proper amount of the settlement sum from Buckeye that is allocable to American contracts, the assessment of $170,000 as excessive profits is unreasonably high. This is based not only on the proper amount of the settlement sum allocable to American contracts and on commissions received on American contracts apart from the settlement, but also on the disallowance of expense items against American commissions."

Under the terms of § 403(a) (5) (B) defendant cannot be an "(a) (5) (B) subcontractor" so far as commissions earned on contracts procured by it for its principal with British and Canadian nationals are concerned. Insofar, therefore, as its claim that it is aggrieved is based upon the "foreign contract theory" defendant is not an (a) (5) (B) subcontractor. Thus, to the extent that it seeks to support by the "foreign contract theory" its claim that it is aggrieved by a determination of the Secretary, defendant had a right of appeal to the Tax Court under § 403(e) (2) of the Act. If, then, its case rests upon the "foreign contract theory", defendant, not having availed itself of its right of appeal to the Tax Court, has failed to exhaust its administrative remedies and has no standing in this court, see Lichter v. United States, 334 U.S. 742, 792, 68 S.Ct. 1294, 92 L.Ed. 1694, and plaintiff's motion for summary judgment should be granted.

But if defendant's case rests upon the "American contract theory" the case is in a different posture. Insofar as the sum determined to be due was based upon commissions earned by defendant on contracts which it procured for its principal with Departments it appears that defendant was an "(a) (5) (B) subcontractor". Defendant alleges that he was such a subcontractor. The Tax Court, under the Act, may not hear appeals of "(a) (5) (B) subcontractors" who are aggrieved by determinations of the Secretary. Thus, insofar as defendant rests its position that the amount claimed by the Government is excessive upon the "American contract theory", a question of construction and constitutionality of the Act as applied to defendant may be presented. Indeed defendant argues that if, as an "(a) (5) (B) subcontractor", it is deprived of a right of review by the Tax Court it will have been deprived of its property without a hearing since it had no hearing before the Secretary of the Navy.

The truth seems to be that defendant, in claiming that the Government's claim is excessive, is relying on the "foreign contract theory" as to part of the Government's claim and on the "American contract theory" as to another part of it. Thus on this motion the case cannot be finally determined on any basis that does not take into account both the "foreign contract theory" and the "American contract theory".

As above indicated, I am clear that the Tax Court is the only tribunal which has or had jurisdiction to revise the Government's claim insofar as it was based on profits based upon foreign contracts. The question remains whether this court can revise the Government's claim insofar as it is based on profits based upon American contracts and earned by an "(a) (5) (B) subcontractor". That question, as I have said above, involves serious questions of the interpretation and constitutionality of the Act. I do not believe that I should attempt to resolve those questions unless the facts of the case really

raise them. At this point I have only the claims of the parties on which to base a determination of the facts. While I cannot say that there is a head-on conflict of fact as to the American contracts, there is certainly a paucity of facts.

For example, defendant does not attempt to fix the amount received by it based upon the American contracts or the amount of the allegedly excessive Government claim that is attributable to them. For all that appears the amount received under the American contracts may not exceed $25,000, in which case it would not have been renegotiable. Renegotiation Act § 403(c) (6).[5]

If defendant had gone to the Tax Court with a substantial claim that most of the amount determined to be excessive was based on foreign contracts and that the balance based on American contracts arose from "(a) (5) (B) subcontracts" under which less than $25,000 was received, the Tax Court would have eliminated the full amount of the Government's claim. Fine v. War Contracts Price Adjustment Board, 9 T.C. 600, 608. Thus if, on a trial of this case, a similar state of facts should appear, this court would, I think, be constrained to hold that the defendant had been entitled to a hearing and determination in the Tax Court so that, as to it, the Renegotiation Act could not be deemed unconstitutional as depriving it of a hearing.

There may be other instances which do not come to mind where an amplification of the facts of this case would show that no question of deprivation of a hearing was actually involved. Under those circumstances I feel that I ought not to pass on that question now.

The result of what I have said is:

As to the "foreign contract theory", while the Government has convinced me that defendant cannot here raise the point that the claim is excessive to the extent of profits based upon foreign contracts, the amount to which this defense would apply is not fixed so that there cannot be summary judgment for part of the claim.

As to the "American contract theory", which involves the validity of the balance of the claim, the facts do not appear in sufficient detail to permit a decision on the question as to the deprivation of a hearing. There thus is no possibility of now determining the insufficiency of the defense as to the balance of the claim and granting summary judgment for plaintiff.

 The motion insofar as it is for summary judgment is denied without prejudice to renewal upon a more precise definition of the facts and issues as the result of a pre-trial order or otherwise.

The motion insofar as it is for an order striking out the answer is denied. See Dioguardi v. Durning, 2 Cir., 139 F.2d 774.

The motion insofar as it is for an order vacating a notice of deposition is denied.

---

5. 58 Stat. 85, 50 U.S.C.App. § 1191(c) (6).