A. P. Dowell, Jr., Petitioner, *v.* James V. Forrestal, Secretary United States Navy Department, Respondent.

Docket Nos. 626–R, 696–R.    Promulgated November 30, 1949.

*Evelyn A. Greene Smith, Esq.*, and *William J. Murray, C. P. A.*, for the petitioner.

*Harland F. Leathers, Esq.*, and *Paul F. Muilenberg, Esq.*, for the respondent.

848

OPINION.

LEECH, *Judge*: The first question presented relates to our jurisdiction to entertain this petition. The respondent contends that petitioner is a subcontractor within the meaning of section 403 (a) (5) (ii) of the Renegotiation Act of 1942 as amended,[1] and, since the

---

[1] Sec. 403 (a). For the purposes of this section—
  *     *     *     *     *     *     *
(5) The term "subcontract" means—
  *     *     *     *     *     *     *
(ii) any contract or arrangement (other than a contract or arrangement between two contracting parties, one of which parties is found by the Secretary to be a bona fide executive officer, partner, or full-time employee of the other contracting party),
(A) any amount payable under which is contingent upon the procurement of a contract or contracts with a Department or of a subcontract or subcontracts thereunder, or determined with reference to the amount of such a contract or subcontract or such contracts or subcontracts, or

appeal is from a determination of the Secretary of the Navy, we lack jurisdiction under section 403 (e) (2) of the Renegotiation Act of 1943.[2] *Iverson & Laux*, 6 T. C. 247. Whether petitioner is authorized to petition this Court for a review of such a determination depends upon whether or not he is within the class excepted from the provisions of section 403 (a) (5) (ii). Petitioner concedes that if it is determined that he was not a "full-time employee" of the Darkwood Co. in, 1942, we lack jurisdiction. We think it is within our province to decide this preliminary question of coverage. *George M. Wolff*, 8 T. C. 146; cf. *Jere J. Callahan*, 13 T. C. 355. What does this record establish was the legal status of petitioner with respect to the Darkwood Co. during the fiscal year 1942? Was he a "full-time employee" of that company, as petitioner contends, or was he an independent contractor or agent, as contended by the respondent?

The Renegotiation Act does not define the term "full-time employee" as used in section 403 (a) (5) (ii) thereof. In the absence of a statutory definition, are we to apply the common law control test which the courts have generally applied in distinguishing between an "employee" and an "independent contractor" as the criterion?

The Renegotiation Act is a war measure, unknown to the common law. Its purpose is to prevent those engaged in war contracts from realizing excessive profits, and the terms used therein should, if reasonably possible, be interpreted and construed to give effect to its proposes. Cf. *United States* v. *Silk*, 331 U. S. 704; *National Labor Relations Board* v. *Hearst Publications, Inc.*, 322 U. S. 111. We think the purposes of the statute will be served if the term "employee" is given its ordinary and usual interpretation as comprising one who meets the test of the generally established concept of legal relationship of employer and employee. Such a relationship exists where the employer retains the right to direct the manner in which the business is to be done, as well as the result to be accomplished. *Singer Manufacturing Co.* v. *Rahn*, 132 U. S. 518, 523. An "independent contractor" is most frequently defined as one who contracts to do certain work according to his own methods and without being subject

---

(B) under which any part of the services performed or to be performed consists of the soliciting, attempting to procure, or procuring a contract or contracts with a Department or a subcontract or subcontracts thereunder:

\* \* \* \* \* \* \*

[2] Sec. 403 (e). \* \* \*

\* \* \* \* \* \* \*

(2) Any contractor or subcontractor (*excluding a subcontractor described in subsection (a) (5) (B)*) aggrieved by a determination of the Secretary made prior to the date of the enactment of the Revenue Act of 1943, with respect to a fiscal year ending before July 1, 1943, as to the existence of excessive profits, which is not embodied in an agreement with the contractor or subcontractor, may, within ninety days (not counting Sunday or a legal holiday in the District of Columbia as the last day) after the date of the enactment of the Revenue Act of 1943, file a petition with the Tax Court of the United States for a redetermination thereof \* \* \*. [Italics supplied.]

to the control of his employer, except as to the product or result of his work. 27 Am. Jur., Independent Contractor, § 2, p. 481.

Applying these concepts to this record, we find no support for petitioner's contention that he was a "full-time employee" of the Darkwood Co. during the fiscal year 1942. Petitioner's relationship to that company is set out in a written agreement in the form of a letter, dated April 10, 1941, which appears in full in our findings of fact. It is there stated that "the entire development of these bushings, together with the sale of same, will depend entirely on you, or someone delegated by you." Such language is appropriate only where an independent relationship was intended to be created. Where one who contracts to perform specified work has the choice whether it is to be done by himself personally or by his delegate, it is apparent that the employer has not retained that control of the time, manner, and method of executing the work essential to create the legal relationship of employer and employee. The contract, we think, makes it clear that the Darkwood Co. reserved merely the right to require certain definite results, and reposes in the petitioner a wide discretion in the conduct of his activities. The record establishes that during the fiscal year 1942 petitioner performed substantial services for other concerns without complaint from the Darkwood Co. Such evidence tends to support the view that petitioner could direct and control the manner in which he could execute his duties. The testimony of petitioner, which is supported by other witnesses who were employees of the Darkwood Co., that petitioner devoted his entire business days, of approximately nine hours on an average of six days, and often went to the factory in the evening when the company operated a night shift, would establish that he was a "full-time employee," if his status were that of an employee at all. If, however, petitioner, under his contract with the Darkwood Co., were free to determine what time he should devote to the prosecution of the work he had undertaken to perform, such evidence has no important bearing upon his legal relationship to that company. Nor does the testimony of other employees that they regarded him as an "employee" have any probative value as evidence as to his actual legal relationship to that company. Such evidence at best is merely an expression of the opinion of the witnesses with respect to the question presented for our determination.

We find nothing in the contract, the nature of the employment, or the surrounding circumstances to satisfactorily establish that petitioner was subject to the control and direction of the Darkwood Co., so as to justify the conclusion that his legal relationship was that of an employee. We conclude, upon this record, that, with respect to the Darkwood Co., petitioner was an independent contractor or agent

during the fiscal year 1942 here involved. Petitioner was, therefore, a subcontractor within the meaning of section 403 (a) (5) (ii) of the Renegotiation Act of 1942. Under section 403 (e) (2) of the Renegotiation Act of 1943, we lack further jurisdiction, and so dismiss petitioners appeal in Docket No. 626–R, with respect to the fiscal year 1942. *Iverson & Laux, supra.* Petitioner's motion to dismiss his appeal in Docket No. 696–R, with respect to the fiscal year 1943, is granted.

*Orders will be entered accordingly.*