Sam Albright v. Commissioner. Mary T. Albright v. Commissioner.
Albright v. Commissioner
Docket Nos. 22937, 22938.
United States Tax Court
1950 Tax Ct. Memo LEXIS 105; 9 T.C.M. (CCH) 745; T.C.M. (RIA) 50212; September 7, 1950
Dorothy Ann Kinney, Esq., for the petitioners. Donald P. Chehock, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These proceedings, consolidated for hearing and opinion, involved deficiencies in income tax for each of the petitioners in the respective amounts of $1,101 for 1945 and $1,032.96 for 1946. The deficiencies arise in part from respondent's determination that certain expenses deducted by the petitioners as adjustments to gross income in 1945 and 1946 were incurred by petitioner Sam Albright in the performance of services as an employee and were not allowable under section 22 (n) (1), Internal Revenue Code. Other adjustments made by respondent are conceded by the petitioners and will be given effect under Rule 50. Findings of Fact The petitioners *106 are husband and wife residing at Amarillo, Texas. The income reported by the petitioners for the taxable years involved was community income and the expense deductions here in issue were community expenses. The petitioners' separate community income tax returns for 1945 and 1946 were filed with the collector of internal revenue for the second district of Texas. Sam Albright, hereinafter referred to as the petitioner, has been engaged in the real estate business for over thirty years. From 1919 to 1936 petitioner maintained a real estate office in Dalhart, Texas. In 1936 he moved to Amarillo, where he became associated with another realtor, Hugo H. Loewenstern. Loewenstern had been engaged in the real estate business since 1929 and was prominent in Amarillo real estate activity. He had a well-established real estate firm located in a desirable office space in the business district of Amarillo. Petitioner and Loewenstern began their business relationship under the terms of an oral contract whereby Loewenstern furnished office space and the assistance of his office staff to the petitioner in return for one half of the commission earned on real estate sales made by the petitioner. *107 In 1942 Loewenstern formed the Hugo H. Loewenstern Co., purportedly making his son Morris a partner in the business. Petitioner entered into the same oral agreement with the company which he had with Loewenstern and his relationship to the business continued just as it had been in prior years. The Loewenstern company does not conduct its sales activities in the same manner as do firms which employ supervised salesmen. Loewenstern employed a bookkeeper-office manager and a stenographer who kept regular office hours and were regarded as regular employees. In addition, the Loewenstern company formed associations with the petitioner and with two other experienced real estate salesmen on a similar basis. During the taxable years here involved Loewenstern did not supervise the selling activities of the petitioner or of the other salesmen, but assisted them or consulted with them only at their request. The petitioner did not maintain regular office hours or work any required number of hours. He chose his own sales prospects and real estate listings from those acquired by his personal efforts, by the company, and by advertising. The company did not assign prospects or listings to him; *108 did not supervise his efforts to make sales; did not require reports from him concerning his progress with the prospective sales; did not require him to attend any sales meetings or report to any sales manager; and did not require submission of transactions to it by the petitioner before they were closed. The petitioner furnished his own office furniture and automobile and paid all of his own incidental expenses. General office and advertising expenses were paid by the company. Any special expenses which arose in closing a transaction were paid one half by petitioner and one half by the company. Petitioner used the company letterhead for correspondence, although it did not set forth his name. Petitioner prepared all advertising concerning property which he handled without submitting it to the company for approval. The advertising always carried his name, usually referring to him as an associate with the company. Transactions which the petitioner handled were usually closed by him, although some were closed by the company. Standard approved listing forms and sales contract forms were used by the petitioner, and the commissions charged were determined from the recommended fee schedule *109 of the Amarillo Real Estate Board, although petitioner had the right to vary the terms of listing agreements and sales contracts and the amount of commissions to be charged without consulting the company. Petitioner signed all real estate listings and sales contracts in the name of the company by himself as agent. Listings belonged to the company and were available to any salesman who wished to work on them. If petitioner or any other associate salesman obtained an exclusive listing, he was entitled to 10 per cent of the gross commission whether he made the sale or not, even if he were not associated with the company at the time the sale might be made. All financial transactions involved in sales were handled through the company, which maintained escrow bank accounts for the purpose of receiving all money involved, except funds received from commissions on sales, which were deposited in the company's bank account. Hugo and Morris Loewenstern and the bookkeeper wrote all checks. Petitioner did not have a drawing account in the company and did not have the power to write checks upon the company's bank accounts, but had the right to withdraw funds credited to his account at any time *110 upon demand. The company maintained a very "loose" association with the salesmen, including the petitioner, and Loewenstern regarded them in theory and in practice as being independent and for all purposes as being "on their own." While he expected the petitioner to conduct himself upon an honorable basis, he did not require an indemnity bond from him and did not regard the company's relationship with the petitioner as being that of employer to employee. During 1945 and 1946 the petitioner spent about one third to one half of his time in the conduct of various personal activities. He entered into several joint ventures with Loewenstern individually, with the Hugo H. Loewenstern Co., and with other persons not connected with the Loewenstern company. He also acquired some properties solely for his own account. Loewenstern was aware of the petitioner's outside business interests and of the time petitioner devoted to them. In each of several joint ventures entered into by the petitioner and Loewenstern a separate agreement was made as to their individual shares of investment and profits and losses. Petitioner's income from joint ventures and personal ventures exceeded his income from *111 commissions on sales in each of the years here involved. During 1945 and 1946 petitioner held a securities license from the State of Texas. The record does not show whether he held a real estate dealer's license, as distinguished from a salesman's license, in those years, although he had held such a license in other years. A securities license differs from a real estate dealer's license in that it entitles the licensee to sell securities in addition to real estate. The company withheld and paid social security taxes for the bookkeeper and stenographer but not for the salesmen during the years here involved. During those years it did withhold income tax on petitioner's income, including both his income from commissions on sales and his income from joint ventures, at his request and for his convenience. Neither Loewenstern nor the petitioner was aware at that time that voluntary withholding of income tax was not authorized. On his 1945 tax return petitioner stated his occupation to be that of a salesman and reported community adjusted gross income of $15,412.55, substantially all of which was reported as salary from the Loewenstern company. In computing adjusted gross income petitioner *112 deducted $419.63 of travel expense and $1,057.84 of miscellaneous business expenses incurred in connection with both his joint ventures and his sales in association with the Loewenstern company. Respondent, among other adjustments not in controversy, allowed the travel expense claimed of $419.63 as a proper deduction in arriving at adjusted gross income. He disallowed the expenses totaling $1,057.84 in computing adjusted gross income, but allowed them as deductions from adjusted gross income in arriving at net income in lieu of the optional standard deduction claimed by the petitioner. The return filed for 1945 by petitioner's wife is identical to that filed by the petitioner and respondent made identical adjustments to the income reported thereon. On his 1946 return petitioner again reported his occupation to be that of a salesman and reported total community adjusted gross income for the year of $22,493.16, most of which was reported as real estate commissions from the Loewenstern company. In arriving at adjusted gross income petitioner deducted $458.81 of travel expense, $311.53 of hotel and meal expenses on business trips, and $2,137.63 of miscellaneous business expenses. Respondent, *113 among other adjustments not in controversy, allowed the expenses claimed for travel and hotels and meals on business trips as proper deductions in arriving at adjusted gross income. He disallowed the miscellaneous business expenses of $2,137.63 in arriving at adjusted gross income, but allowed them as deductions from adjusted gross income in arriving at net income in lieu of the optional standard deduction claimed by petitioner. The return filed for 1946 for petitioner's wife and the adjustments made thereon by respondent were identical to those for petitioner. Opinion LEMIRE, Judge: The sole issue here is whether expenses incurred by the petitioner in connection with his activities in the real estate business in 1945 and 1946 are deductible by him under section 22 (n) (1), Internal Revenue Code, in arriving at adjusted gross income for those years. Respondent determined that the expenses in controversy are deductible only in arriving at net income on the ground that they were incurred by petitioner in connection with services by him as an employee and not in connection with a business carried on by the petitioner. Petitioner contends that he was an independent *114 contractor associated with the Hugo H. Loewenstern Co., not an employee of the company. In distinguishing between the relationships of employee and independent contractor in A. P. Dowell, Jr., 13 T.C. 845, we said: "* * * We think the purposes of the statute will be served if the term 'employee' is given its ordinary and usual interpretation as comprising one who meets the test of the generally established concept of legal relationship of employer and employee. Such a relationship exists where the employer retains the right to direct the manner in which the business is to be done, as well as the result to be accomplished. Singer Manufacturing Co. v. Rahn, 132 U.S. 518, 523. An 'independent contractor' is most frequently defined as one who contracts to do certain work according to his own methods and without being subject to the control of his employer, except as to the product or result of his work. 27 Am. Jur., Independent Contractor, § 2, p. 481." In that case we found that the petitioner's contract reposed in him a wide discretion in the conduct of his activities, the corporation with which he contracted reserving only the right to require definite *115 results with no right to supervise the manner in which he executed his duties. We concluded there that the petitioner was an independent contractor or agent during the period involved. In Raymond E. Kershner, 14 T.C. 168, which respondent cites as applicable herein, we held that the petitioner was an employee of an insurance company, after applying the test set out above. In that case, however, we found that the petitioner worked under the supervision and control of, reported to, and was at all times responsible to an office manager placed in charge of the office where the petitioner worked by the insurance company for the conduct of his activities under all currently existing rules and regulations of the insurance company relating to such agents as the petitioner. The petitioner herein, unlike the petitioner in the Kershner case, was not bound by any of the usual rules or regulations found in employment contracts. He was free to devote a substantial part of his time to the conduct of business activities having no connection with Loewenstern company and was free of any supervision and control by Loewenstern in the conduct of his sales activities. Cf. Irene L. Bell, 13 T.C. 344. *116 Loewenstern regarded the salesmen associated with the company, including the petitioner, as being independent and for all purposes "on their own." He consulted with them about sales they were working on only when they requested it. We think that the preponderance of the evidence is that petitioner was free of any degree of supervision or control sufficient to make him an employee. We conclude that petitioner's legal relationship with the Loewenstern company during 1945 and 1946 was that of an independent contractor. It follows that respondent erred in disallowing the expenses in controversy as adjustments to gross income under section 22 (n) (1), Internal Revenue Code. Decisions will be entered under Rule 50.