JIM'S WINDOW SERVICE, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jim's Window Service, Inc. v. Commissioner
Docket No. 624-73
United States Tax Court
T.C. Memo 1974-115; 1974 Tax Ct. Memo LEXIS 201; 33 T.C.M. (CCH) 563; T.C.M. (RIA) 74115; May 8, 1974, Filed. Robert L. Jordan, for the petitioner. Donald W. Mosser, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $208.14 deficiency in petitioner's 1968 Federal income tax. The sole issue presented is whether petitioner is entitled *202 to deduct its 1968 contributions to its pension plan. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner is an Ohio corporation which maintained its principal office in Cincinnati, Ohio, when it filed its petition herein. Petitioner filed its 1968 Federal income tax return with the district director of internal revenue at Cincinnati. Petitioner was engaged in the business of cleaning and washing windows of homes and commercial and public buildings. James R. Long ("Long"), president, owns 51 percent of petitioner's stock, and his wife, Virginia, treasurer, owns 44 percent of such stock. Prior to incorporating petitioner, Long operated the window washing business as his sole proprietorship. During 1968 eight men performed window washing services for petitioner. The following is a list of those window washers, the income each received from washing windows during 1968 and the number of years each performed services for petitioner and its predecessor: Name
Income
Years Andrew J. Weber
$13,073.85
11
Roy R. White
10.030.51
6
James H. Gloeckner
8,922.86
7
Alvin G. Wessel
8,582.08
over 20
James E. Garrison
8,160.08
3
Donald J. White
7,169.60
6
Edward Kessling
5,489.00
18
David P. Cox
1,585.23
1
*203 Petitioner and all of the window washers except Cox executed separate but identical Contracts which provide in part that petitioner ("Contractor") solicits and obtains window washing contracts with customers and sublets such contracts to the window washer ("subcontractor"); that the Contractor and subcontractor agree that subcontractor shall perform each service contract sublet to him, and shall furnish at his own expense all labor, materials, tools, equipment, and transportation necessary and incidental to performing the window washing services; that Contractor agrees to pay subcontractor 70 percent of the price of each service contract which subcontractor fully performed to the satisfaction of Contractor; that Contractor will bill the customer for all services performed by subcontractor, except that any amount collected by subcontractor shall be remitted in full to Contractor; that subcontractor shall begin work without delay on each contract sublet to him, and shall be solely responsible for all injuries and damages to persons and property, including his employees, due to his neglect or default; that the parties agree that the sublet service contracts are the exclusive property *204 of Contractor; that upon termination of this Contract subcontractor will deliver to Contractor all records concerning Contractor's business; that subcontractor will not attempt to appropriate Contractor's customers for his own use or solicit for himself or others any of Contractor's customers; and that the Contract is terminable by either party upon ten day's written notice. Petitioner maintains a small office which the window washers were not required to visit, but they did so weekly to receive their payments from petitioner. Each evening Long would telephone each window washer and advise him of his assignments for the next day, including the name of the customer, the address and the price of the job. The window washer was under no obligation to accept any particular job assigned to him. Petitioner billed the customer for the work performed by the window washer and paid the window washer 70 percent of the amount billed. The window washer was compensated only for the work actually performed. He received no guaranteed minimum compensation, and he was not paid for days he did not work. If a customer was dissatisfied with a window washer's work the customer would complain to *205 Long, who would advise the window washer that the work had to be redone to the customer's satisfaction. In such situations, the window washer did not receive additional remuneration, but absorbed the cost of redoing the job himself. Some of the window washers were experienced when they became associated with petitioner or its predecessor. For example, Weber learned his trade in 1952 while attending high school in Washington, D.C. Those who were inexperienced, such as Cox, went through a brief training period under the direction and supervision of one of the experienced window washers, who alone or together with Long would pay the trainee a small weekly salary and purchase his breakfast and lunch. Long also washed windows for customers during 1968. He did not supervise the eight window washers in the performance of their work and there was no understanding or agreement giving Long the right to exercise such supervision. Indeed, it was understood between them that the window washers would determine the details of their performance on their own, including the type of supplies and equipment used, hours of work and other matters. They were paid to achieve a result, and were not *206 paid until the result was achieved. Long did work along with them when the job required more than one person. Long and his wife were fulltime employees of petitioner in 1968 and received compensation of $8,450 and $2,850, respectively. The window washers paid their own transportation costs. Some used their own trucks and others used their automobiles. There was no advertising or lettering on any of these vehicles. The window washers also selected and purchased their own tools and supplies, including ladders, sponges, buckets, squeegees, towels and detergents, and retained the right to decide for themselves how to do the job and what tools and supplies to use. The window washers were not bonded or insured by petitioner. The cost of any damage caused by a window washer, such as breaking a window, was borne solely by the window washer himself. The window washers neither advertised nor solicited business for themselves. Occasionally they solicited new customers for petitioner, reporting to Long the name, address and telephone number of the new customer and the price of the job.Petitioner then billed the new customer for whom work had been performed and paid the window washer *207 who had done the work his 70 percent commission. The window washers normally worked a five day week, weather permitting, during the window washing season. However, they alone determined the days and hours they worked and the jobs they performed. They received no vacation pay from petitioner. They usually took their vacations during the off seasons (January-February and July-August) when the window washing business is not very profitable. Some of the window washers participated in a group hospitalization plan through petitioner, but they paid their own insurance premiums. Petitioner paid each window washer his percentage weekly. Petitioner did not withhold FICA, FUTA or income taxes, but gave each of them a Form 1099 indicating they had received compensation from sources other than wages. [1]
Weber, R. White, Gloeckner, Wessel and D. White each attached a Schedule C (Profit or (Loss) From Business or Profession) to their 1968 individual income tax returns on which they reported *208 their gross income and deductions from window washing, and each paid 1968 self-employment taxes. Cox, however, neither attached a Schedule C to his 1968 return nor paid 1968 self-employment tax. None of the eight window washers was covered during 1968 by petitioner's pension plan. Only Long and his wife were covered by the plan. On its 1968 return, petitioner claimed an $860.08 deduction for contributions to its pension plan. Respondent disallowed the deduction in full on the ground that the eight window washers were employees of petitioner, and therefore the pension plan "does not meet the provisions of section 401." [2]
ULTIMATE FINDING OF FACT The eight individuals who performed window washing services on behalf of petitioner during 1968 were independent contractors. Opinion This case presents a single factual issue, namely, whether during 1968 the eight window washers were petitioner's employees or were independent contractors. The parties agree that if the window washers were petitioner's employees, respondent must prevail because petitioner's pension *209 plan would then be discriminatory. Conversely, the parties agree that if the window washers were independent contractors, petitioner must prevail because petitioner's pension plan would be nondiscriminatory inasmuch as all employees (Long and his wife) are participants. In order for a pension plan to be a qualified plan within the meaning of section 401(a), coverage and contributions or benefits provided under the plan must not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist of supervising the work of other employees, or highly compensated employees. As noted above, it is a factual question whether an individual is an employee or an independent contractor. Wendell E. James, 25 T.C. 1296, 1299-1300 (1956); Chester C. Hand, Sr., 16 T.C. 1410 (1951). We have found as a fact that the eight window washers here involved were independent contractors during 1968. Section 31.3401(c)-1(b), the income tax regulation defining "employee" for withholding purposes, provides as follows: Generally the relationship of employer and employee exists when the person for whom services are preformed has the right *210 to control and direct the indidvidual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is not an employee. This same general common law definition has been used by the courts in numerous cases. See, for example, Lanigan Storage & Van Company v. United States, 389 F.2d 337 *211 (C.A. 6, 1968); Glenn v. Beard, 141 F.2d 376 (C.A. 6, 1944), certiorari denied 323 U.S. 724 (1944); A. P. Dowell, Jr. v. Forrestal, 13 T.C. 845 (1949); and Irene L. Bell, 13 T.C. 344 (1949). Petitioner's control over the window washers was limited to the result to be accomplished. They selected and purchased their own equipment. They were not supervised by petitioner and did not work on petitioner's premises. Rather they telephoned Long each evening to report their day's activities, so that petitioner could bill the customers, and at the same time they received the next day's assignments. If the window washer were not interested in a particular job, he could reject it. The window washers thus determined their own working hours and jobs. Long regarded the window washers as on their own. They worked independently from each other and from Long except where the job required two persons. We think that these facts establish that the window washers were independent in the conduct of their activities and that petitioner only required certain results but did not control their method of operating. Moreover, the window washers received *212 no guaranteed minimum compensation or specific salary. They received a percentage of compensation based solely upon the amount of work they actually performed. In addition, they had to furnish their own transportation and tools at their own expense. If they broke a window while washing it, they, not petitioner, had to pay for the cost of repairs. Petitioner carried no accident or liability insurance on them. Petitioner did not withhold FICA, FUTA or income taxes from their compensation. In 1968 at least five of the eight window washers filed Schedules C's with their 1968 returns (indicating that they were in business for themselves) and paid self-employment taxes. Cox did not file a Schedule C with his 1968 return or pay the self-employment tax. However, in late 1967 and early 1968 Cox was being trained by his brother-in-law to become a window washer, he apparently did not have the skills necessary to succeed as a window washer, and in March, 1968, petitioner recommended that he leave. Under the agreement between petitioner and the window washers, neither party could terminate the relationship without giving the other ten days written notice. Petitioner was thus not free *213 to orally or summarily discharge the window washers, nor could they go elsewhere without first giving notice. In any event, despite the language in the regulations specifying the right to discharge as an indicium of employment, we fail to follow the regulation's logic. Clearly enough, it is as open to a principal to terminate the services of an independent contractor (absent a contractual bar) as it is to terminate the services of an employee (absent a contractual bar). Consequently, the existence or absence of a right to immediate discharge does not advance analysis. We do not doubt that tax considerations and the avoidance of other requirements imposed by law upon employers were in petitioner's mind when he arranged his business affairs in this manner. Our task, however, is to determine whether, not why, petitioner dealt with his window washers as independent contractors. On the facts it is clear that he did. Petitioner was not required to enter into an employment relationship. His window washers (except Cox) were under no misapprehension as to the nature of the relationship. We conclude that the window washers were not employees of petitioner, but were independent contractors. *214 Therefore, petitioner's pension plan is qualified and contributions petitioner made to the plan in 1968 are deductible. Decision will be entered for the petitioner. Footnotes
1. Cash wages paid to an employee are reported on Form W-2. Section 1.6041-2, Income Tax Regs. Payments other than cash wages must be reported on Form 1099. Section 1.6041-1, Income Tax Regs.↩
2. All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue. ↩