WORLD WIDE AGENCY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
World Wide Agency, Inc. v. Commissioner
Docket No. 12575-78.
United States Tax Court
T.C. Memo 1981-419; 1981 Tax Ct. Memo LEXIS 322; 42 T.C.M. (CCH) 617; T.C.M. (RIA) 81419; August 11, 1981. Robert M. Dahlbo and Cynthia Garrett, for the petitioner. John O. Kent, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioner's Federal income taxes of $ 18,719 and $ 15,934 for its taxable years ending December 31, 1972, and December 31, 1974, respectively. The only question presented is whether certain payments by petitioner for gifts made by a sales representative are subject to the *324 $ 25 per individual recipient gift expense limitation set forth in section 274(b). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, World Wide Agency, Inc., is a California corporation whose principal place of business was located in Los Angeles, Calif., at the time its petition was filed in this case. Petitioner is a calendar year, accrual basis taxpayer. Petitioner is, and was during the years in issue, engaged primarily in the sale of classified advertising. Petitioner specialized in the placement of employment advertising for large corporation in newspapers, in trade publications, and sometimes on radio or television. A typical example of petitioner's work would be the placement of a full page ad in the Sunday Los Angeless Times offering many types of employment opportunities with a major corporation. Petitioner was required to pay promptly for the ads it placed, and petitioner thereby became entitled to a substantial commission when it later billed the client. The manner *325 in which the advertising copy was prepared for submission to newspapers underwent some changes around the time of the years in issue, but whatever the format petitioner would design, type or typeset, and do the artwork when needed for the advertising it placed. Generally, the completed layout was approved by the client prior to publication. All of petitioner's business was acquired through personal contacts. Petitioner employed its own in-house salesmen for this purpose but also utilized independent commissioned sales personnel, analogous to outside salesmen. Pat Howard (Howard) was one such independent salesman, and he started working for petitioner in late 1972 pursuant to an oral contract. Previously, Howard had been employed by a New York firm in the same business as petitioner. Howard brought one employee and some 40 or 50 clients to petitioner with him. These clients were major corporations typical of petitioner's other customers. Howard's arrangement with petitioner was that he would run his own shop, generate his own business, and take 50 percent of the net profits he earned after the deduction of all expenses associated with his activities. Under petitioner and *326 Howard's oral agreement, Howard had complete control over his own operations. Howard managed between 6 and 9 full-time employees, who were hired and fired by him and worked under his sole control. Their salaries, paid by petitioner, were charged against Howard's gross commissions. Howard's clients remained his own at all times and were not contacted by petitioner's in-house employees. Howard paid rent for his and his employees' use of office space on petitioner's premises. Howard paid a share of the cost of typesetting and other equipment maintained by petitioner, and when petitioner's own employees performed services for Howard, Howard was charged therefor. Neither Howard nor his employees were required by petitioner to work set hours, to meet quotas, or to service particular clients. Howard received only his 50 percent split of the net profits from the business he generated and was not eligible for bonuses, sick pay, or other compensation benefits from petitioner. Income taxes and FICA were not withheld from Howard's net commissions. Besides providing office space and various support services, petitioner's primary role was to finance Howard's operations. Petitioner paid *327 the newspapers or other media for ads placed by Howard and billed Howard's clients under its own letterhead. Thus, Howard's clients were treated as customers of petitioner for billing purposes. Petitioner also paid for the bulk of Howard's expenses, which it charged against Howard's gross commissions. In effect, petitioner reimbursed Howard for the expenses he incurred. [2] The accounting for Howard's operations was initially handled and prepared by petitioner, and both Howard and an officer of petitioner would periodically review the expenses charged against Howard's gross income. Among Howard's expenses paid for by petitioner were tickets to shows and sporting events provided by Howard for his clients. All such tickets were given to employees, such as a personnel manager, of Howard's corporate clients usually in blocks of 2 to 6 tickets. In most but not all cases Howard knew the individual receiving the *328 tickets. Sometimes Howard would deliver the tickets himself as a personal touch, but generally they were picked up by the recipient at the box office. Howard or his employees accompanied recipients to some but not most of the events for which tickets were provided. Howard used gifts of tickets primarily as favors to promote sales. All of the tickets given as gifts by Howard were ordered by telephone from Coliseum and Arena Ticket Agency (Coliseum). Howard used Ocliseum, as he had for years prior to his working with petitioner, because Coliseum, for a premium, was consistently able to deliver hard-to-get, exceptional seats. Coliseum billed petitioner monthly, and all of the tickets provided for Howard's use were billed to Howard's separate account. Petitioner also had its own account with Coliseum. Howard's ticket purchases were not subject to petitioner's prior approval, and very few of the recipients of the tickets charged to Howard's account were known by any of petitioner's officers. Petitioner simply paid Howard's bill from Coliseum monthly, and charged these amounts against Howard's gross commissions. Petitioner's concern over Howard's total travel and entertainment *329 expenses eventually led to a parting of the ways. Petitioner felt Howard's expenses in these areas were too high but was unable to induce Howard to modify their working arrangement. In 1976, Howard left petitioner on friendly terms, and he joined one of petitioner's competitors. He took all his clients with him, including those he had acquired while associated with petitioner. Petitioner paid Coliseum $ 39,977.25 for tickets ordered in 1974 and $ 45,922.75 for tickets ordered in 1975. In his notice of deficiency, respondent treated such expenses as business gifts and disallowed their deduction in excess of $ 25 per individual recipient. Respondent's determination for 1975 resulted in a reduction in the amount of that year's net operating loss carried back to 1972, which is why that year is in issue. OPINION Pat Howard (Howard), one of petitioner's independent sales personnel, made gifts of tickets to shows and sporting events as favors to his clients and their employees. Petitioner paid for the tickets as part of its arrangement with Howard and charged the expense against the gross commissions he generated. Respondent does not dispute that petitioner's payments were deductible *330 as business expenses under section 162. The issue presented is whether petitioner's expenditures are subject to section 274(b), which limits the deduction of business gifts to $ 25 per individual recipient. As hereinafter set forth, this case turns on whether section 274(b) applies to a taxpayer's payments to or on behalf of an independent contractor for gifts made by the independent contractor in the course of rendering services to the taxpayer. Section 274(b)(1) provides, in part: Limitation.--No deduction shall be allowed under section 162 or section 212 for any expense for gifts made directly or indirectly to any individual to the extent that such expense, when added to prior expenses of the taxpayer for gifts made to such individual during the same taxable year, exceeds $ 25. The reasons for this limitation are similar to the policies underlying section 274(a) (entertainment expenses), that is, to disallow as business deductions items for which there will be no matching inclusion in the income of the recipient and generally to prevent the deduction of personal expenditures under *331 the guise of business expenses. See H. Rept. No. 1447, 87th Cong., 2d Sess., 1962-3 C.B. 405, 423. Business gifts are defined by section 274(b) to mean "any item excludable from gross income of the recipient under section 102," [3] subject to certain de minimus exceptions which do not apply here. The parties have stipulated that the tickets paid for by petitioner qualify as "business gifts" and that the recipients were employees of customers of petitioner. On the other hand, as petitioner has consistently argued, both the stipulation and the record as a whole make it clear that the recipients of the gifts in issue were petitioner's customers for billing purposes only and were in every other sense the clients of Howard, an independent sales representative not under petitioner's direct control. The stipulation is by no means a concession by petitioner that Howard made the gifts in question at petitioner's direction or on its behalf. Howard's employment relationship to petitioner was put in issue by the petition and has been at the crux of this case throughout its prosecution. *332 Respondent believes this case is clear cut and, relying upon the stipulation that the payments in question were for business gifts, argues only that section 274(b) applies to this case and requires a decision in his favor. [4]
*333 Petitioner contends the issue is somewhat more complex. Petitioner argues that Howard, an independent contractor, made the gifts in question to his clients and that petitioner only reimbursed Howard for these expenses as it was required to do under its contract with Howard. Thus, petitioner argues that it should not be considered a donor of gifts to individuals for purposes of the section 274(b) limitation. Petitioner relies primarily upon section 1.274-3(d)(2), Income Tax Regs., discussed below. Petitioner further argues that its position is consistent with and supported by the substantiation requirements set forth in section 1.274-5(g), Income Tax Regs. We agree with petitioner. Section 274(b) expressly applies to both direct and indirect gifts to individuals. Indirect gifts are defined in section 1.274-3(d)(2), Income Tax Regs., as follows: If a taxpayer makes a gift to a corporation or other business entity intended for the eventual personal use or benefit of an individual who is an employee, stockholder, *334 or other owner of the corporation or business entity, the gift generally will be considered as made indirectly to such individual. Thus, if a taxpayer provides theater tickets to a closely held corporation for eventual use by any one of the stockholders of the corporation and if such tickets are gifts, the gifts will be considered as made indirectly to the individual who eventually uses such ticket. In contrast, payments that will not be considered indirect gifts are discussed in the same regulation as follows: A gift for the eventual personal use or benefit of some undesignated member of a large group of individuals generally will not be considered as made indirectly to the individual who eventually uses, or benefits from, such gifts unless, under the circumstances of the case, it is reasonably practicable for the taxpayer to ascertain the ultimate recipient of the gift. Thus, if a taxpayer provides several baseball tickets to a corporation for the eventual use by any one of a large number of employees or customers of the corporation, and if such tickets are gifts, the gifts generally will not be treated as made indirectly to the individuals who use such tickets. [Sec. 1.274-3(d)(2), Income Tax Regs. *335 ] Gifts for the use of undesignated members of a large group are not considered indirect gifts to individuals; thus, one distinguishing factor lies in the provider's knowledge about the ultimate recipient of the gift. But the heart of the distinction being made is that payments for gifts to be made by and in the sole discretion of some other business entity are not treated as "gifts to individuals" by the payor in the first instance. In other words, when business A provides for gifts that will be made by business B to its employees or customers, the relationship between business A and the eventual recipients of the gifts may be too attenuated to treat A as having made "gifts to individuals." Petitioner's payments do not represent indirect gifts to individuals under the above regulations because petitioner has shown that it had no prior knowledge of or control over the individuals Howard favored with gifts and that Howard, as an independent contractor, qualifies as a business entity separate from petitioner. That petitioner had no control over Howard's largess is clear from the facts. That petitioner was later able to ascertain the identities of some recipients *336 when it was billed for Howard's tickets by Coliseum in no way affects the extent of its role in the donative process. As to the second point, we need not exhaustively reiterate the definition of an independent contractor for tax purposes to decide that Howard was one. Suffice it to say here that that touchstone of the distinction between an independent contractor and an employee is the right to control the worker's activities on the job and the manner in which he carries out the services provided. See Simpson v. Commissioner, 64 T.C. 974, 984 (1975); Ellison v. Commissioner, 55 T.C. 142, 152-153 (1970); Dowell v. Forrestal, 13 T.C. 845, 849-850 (1949). Howard's business activities were at all times under his sole control; he had his own separate shop, employees, clients, income, and expenses. The record in this case compels the conclusion that Howard was an independent contractor, and we so ruled fom the bench at trial. We can see no reason why an independent contractor or a sole proprietorship should be treated as any less of a "business *337 entity" than a corporation, partnership, or other mode of carrying on a trade or business for purposes of the foregoing regulations. Petitioner also relies on the substantiation requirements of section 1.274-5(g), Income Tax Regs., which deals with "reimbursements of persons other than employees." Under section 1.274-5(g)(1), Income Tax Regs.: the term "reimbursements" means advances, allowances, or reimbursements received by an independent contractor for travel, entertainment, or gifts, in connection with the performance by him or services for his client or customer, under a reimbursement or other expense allowance arrangement with his client or customer, and includes amounts charged directly or indirectly to the client or customer through credit card systems or otherwise. Accordingly, petitioner's payments for Howard's gifts constitute reimbursements within the meaning of these regulations. Section 1.274-5(g)(2) and (4), Income Tax Regs., squarely places the burden of substantiating reimbursed gift expenses upon the independent *338 contractor and not the payor: A client or customer [served by an independent contractor, in other words, petitioner] shall not be required to substantiate * * * reimbursements to an independent contractor for travel and gifts * * *. [5]
Revenue Procedure 63-4, 1963-1 C.B. 474, 479 makes substantially the same point: 27. Question: If a client reimburses his attorney for expenditures for travel, entertainment, or gifts, must the client obtain records and documentary evidence from his attorney concerning those expenditures in order to deduct the reimbursed expenses? Answer: Generally, No. A client does not have to obtain records, including required documentary evidence, to substantiate reimbursements to an independent contractor for travel and gifts. From the foregoing, which establishes that Howard rather than petitioner is required by the regulations to substantiate the expenses *339 for his business gifts, petitioner concludes that Howard rather than petitioner is subject to the dollar limitations of section 274(b). [6]
Respondent contends that because substantiation under section 274(d) is not at issue in this case the regulations pertaining thereto are irrelevant. We disagree, and agree with petitioner that the regulations discussed above are relevant. Respondent's regulations should at the very least be read consistently where they deal with different aspects of the same subject matter. See generally Rowan Companies, Inc. v. United States,     U.S.     (June 8, 1981). We conclude that it would be anomalous to subject petitioner to the dollar limitations under section 274(b) for gifts made by an independent contractor when it is specifically excepted from the substantiation requirements for those same expenses by respondent's regulations and rulings under section 274(d). The regulations under section 274 are complex enough. To hold that those regulations also subject taxpayers to inconsistent reporting *340 requirements would be patently unreasonable and could only serve, in the long run, to undermine that voluntary compliance with the law which is at the heart of our system of taxation based on self-assessment. See generally Flora v. United States, 362 U.S. 145, 176 (1960). All in all, we think the issues in this case have been needlessly bogged down by the labeling of petitioner's payments as "gifts" in the first place. Petitioner must shoulder some of the blame for this itself, but in fairness petitioner cannot realistically be faulted for seeking to bring its case within the language of the regulations, which distinguish between "gifts" subject to 274(b) and "gifts" that for various reasons are not. However, a better way to approach these problems would be to point but that what certainly were "gifts" to the recipients may or may not have been "gifts" from Howard's point of view (the evidence suggests that in at least some instances the tickets could be treated by Howard as "entertainment expenses" under section 274(a) and (h) [now (i)], see sec. 1.274-2(b)(1)(iii)(a) and (b), Income Tax Regs.) and were expenses, not gifts, from petitioner's point *341 of view. Cf. Bennett's Travel Bureau, Inc. v. Commissioner, 29 T.C. 350, 359-360 (1957). Petitioner was required by contract to pay for Howard's generosity, and whatever benefit may have accrued to petitioner therefrom it had no choice in the matter short of severing its relationship with Howard. The statutory language of section 274(b), which defines "gifts" in terms of excludability from the recipient's income, can be applied to reach our result once Howard is identified as the true recipient of petitioner's payments. However, we need not here choose between that analysis and the more cumbersome approach embodied in the regulations because the result would be the same under either approach.
We hold that petitioner's expenses for Howard's gifts are not subject to the $ 25 per individual recipient limitation of section 274(b). Accordingly, Decision will be entered for petitioner. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue.↩
2. Another way to look at it would be to say that petitioner reimbursed Howard for half of his expenses. Petitioner's payment of the other half was actually borne by Howard in the sense that such expenses reduced Howard's 50 percent share of the net income he produced.↩
3. It is not easy to reconcile this definition with Commissioner v. Duberstein, 363 U.S. 278↩ (1960), but the effect of that case has not been raised as an issue herein.
4. On brief, respondent for the first time also asserts that petitioner and Howard were joint venturers subject to sec. 274(b)(2)(A), which provides, "In the case of a gift by a partnership, the limitation contained in [sec. 274(a)] paragraph (1) shall apply to the partnership as well as to each member thereof." This argument was not raised by respondent in his notice of deficiency, in his answer, or at trial; and comes far too late to be considered by us here. It is well settled that we will not rule on new issues or theories raised after trial requiring factual determination different from those litigated by the parties. See Markwardt v. Commissioner, 64 T.C. 989, 997 (1975); Estate of Horvath v. Commissioner, 59 T.C. 551 (1973). Petitioner's position that Howard was an independent contractor was set forth clearly in the petition, and at trial respondent argued only that petitioner's contentions were legally insufficient, and that the $ 25 limitation of sec. 274(b)(1)↩ applied notwithstanding the facts alleged by petitioner. In any case, we would be hard pressed to make sense out of respondent's confusing assertion that "as an independent contractor, Pat Howard was associated with petitioner as a profit center or joint venturer." Simply put, independent contractor and partner are inconsistent, different legal relationships.
5. Entertainment expenses of an independent contractor, which are not in issue herein, are treated separately under sec. 274(e)(4)(B) and sec. 1.274-5(g)(3) and (4), Income Tax Regs.↩
6. Cf. Feinstein v. Commissioner, T.C. Memo. 1975-193 ("outside salesman" held subject to sec. 274(b)↩ limitation).